**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TARKETT USA, INC.** | ) | **CASE NO.1:16CV2400** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **HARNIX CORP., ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants' Harnix Corp. d/b/a Linron, J. Ron Harris and Linda Krienke ("Defendants") Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Motion to Transfer Venue. (ECF # 9). For the following reasons, the Court denies Defendants' Motion.

Plaintiff Tarkett USA, Inc. ("Tarkett") is located in Solon, Ohio and is a manufacturer, marketer and distributor of commercial and residential flooring products. Harnix Corp. d/b/a Linron ("Linron") is a Texas based company that distributes, resells and acts as installation project manager of flooring materials, including products manufactured by Tarkett.

According to Tarkett's Complaint, in 1996, Tarkett, through its predecessors Azrock Industries, Inc. and National Floor Products Company, Inc., entered into an Agreement with

Defendants that involved the reselling of Tarkett products to Walmart. Under the Agreement, Defendants would manage the installation process of the Tarkett products. The Agreement contained a non-compete clause wherein Defendants agreed not to sell competing products to Walmart.

Defendants also managed the removal of Tarkett products at Walmart stores wherein the old flooring was removed and returned to Tarkett for recycling and use in new Tarkett products. These include vinyl composite tile ("VCT"), which consists of approximately 30% recycled materials, reduce Tarkett costs and support Tarkett's sustainability initiatives.

The relationship continued for nearly twenty years with an average of $14,500,000 of Tarkett products sold to Walmart through 2013. During this time the VCT product sold to Walmart was manufactured in Texas. In 2014, Tarkett moved its VCT production operation to Alabama. Initially, the VCT product produced at the Alabama facility did not meet Tarkett quality standards. In 2015, Defendants represented to Tarkett that Walmart refused to accept Tarkett VCT due to its poor quality. Tarkett later learned these representations were not true. In light of these representations, Tarkett, per amendment to the Agreement, allowed Defendants to source other products to Walmart until Tarkett resolved its Alabama production issues. After a few months the production issues were resolved, however, Defendants continued without explanation to complain about the VCT quality.

Defendants refused to work with Tarkett. Thereafter, Tarkett established a set a performance metrics for its product which mirrored the product quality standards of its Texas produced VCT. Defendants agreed that if the Alabama-produced VCT met these metrics Defendants would resume sales of Tarkett products to Walmart. Despite meeting the

performance metrics, Defendants refused to resume sales to Walmart of Tarkett products and instead sold competitor products to Walmart.

In 2015, Tarkett and Defendants attempted to negotiate a new agreement to replace the 1996 Agreement. Defendants represented to Tarkett that Walmart now insisted on having more than one source of flooring products. Tarkett subsequently learned this was not true.

On August 7, 2015, Defendants gave notice of termination of the 1996 Agreement. Tarkett acknowledged receipt of the notice and reminded Defendants of the prohibited activities clause, including the non-compete provision, that would remain in effect for one year. In spite of the contractual non-compete clause, Defendants have competed with Tarkett in violation of their obligations under the 1996 Agreement.

Tarkett alleges Breach of Contract, Breach of Implied Contract and Intentional Misrepresentation against Defendants. Tarkett further alleges Tortious Interference with Business Relationships and Breach of Contract claims against a former employee.

**Defendants' Motion to Dismiss**

According to Defendants, the Court lacks Personal Jurisdiction over them because: they did not personally avail themselves of the privilege of doing business in the State of Ohio. The only contact with the State of Ohio is Tarkett's location there. For the first fifteen years of the parties' relationship Tarkett's predecessors were located in Texas until acquired by Tarkett. The only contacts with Ohio were due to Tarkett's relocating its headquarters there fifteen years into the relationship.

Furthermore, none of conduct of which Tarkett complains occurred in the State of Ohio. Negotiations between Defendants and Walmart took place in Texas and Arkansas,

therefore, any activity in violation of the non-compete clause occurred outside Ohio. Any violation of an implied contract to return old flooring for recycling occurred outside Ohio as returned product was sent to Alabama, not Ohio. Also, any alleged misrepresentations to Tarkett about Walmart occurred in Texas, not Ohio.

Should the Court find it may exercise personal jurisdiction over Defendants, Defendants request that the Court transfer venue for the convenience of the parties. According to Defendants, the Southern District of Texas is the proper venue because the operative facts of Tarkett's claims occurred in Texas. All Defendants reside in Texas and Defendants' business is located in Texas. Any alleged improper solicitation of competing business occurred in Texas and all Defendants' sales information and communications are located in Texas. Walmart further returned defective product to Defendants in Texas. Costs of defending in Ohio will be substantial for Texas-based Defendants. Walmart witnesses will be critical to the case and the Court would lack subpoena power over them.

Public interests favor transfer because jurors in Ohio have no significant local interest in a case where the relevant acts took place in Texas. The relevant contract was not negotiated in Ohio and the tile at issue was not manufactured in Ohio. Texas law would apply because Texas has the most significant contacts to the dispute.

**Plaintiff's Opposition**

According to Plaintiff, Defendants engaged in numerous acts in the State of Ohio sufficient to establish minimum contacts. According to the affidavit of Joseph Jared, Vice-President of Business Development for Tarkett, Defendants placed product orders with Tarkett for flooring products to be installed in over eighty Ohio based Walmart stores.

4

Defendants oversaw the installation and removal of Tarkett products in these stores. Tarkett's witnesses are all located in Ohio. Tarkett moved its operations to Ohio in 2006. Since that time Defendants have been in constant communication with Tarkett via, phone, email and regular mail in furtherance of their contractual relationship. Defendants submitted travel reimbursement requests to Ohio and made representations forming the bases of Plaintiff's claims to Tarkett employees in Ohio. Defendants sent samples of allegedly defective VCT to Ohio. Amendments to the 1996 Agreement were executed by Tarkett employees in Ohio.

The plaintiff bears the burden of showing that a federal court has personal jurisdiction over the defendant. However, when the court relies solely on written materials and affidavits, that burden is relatively slight; and the plaintiff must make only a prima facie showing that personal jurisdiction exists. *Air Prods. & Controls, Inc. v. Safetch Int'l, Inc.*, 503 F.3d 544 549 (6th Cir.2007). The court must view the pleadings and affidavits in a light most favorable to the plaintiff; and when the court disposes of a Rule 12(b)(2) motion without an evidentiary hearing, it does not consider facts proffered by the party seeking dismissal. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998); *see CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir.1996).

## **STANDARD OF REVIEW**

The court must first determine whether personal jurisdiction is proper under the forum state's long-arm statute — in this instance, Ohio Revised Code 2307.382. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002); *Sterling Jewelers, Inc. v. M & G Jewelers, Inc.*, No. 5:14CV2030, 2015 WL 545778 at *1 (N.D.Ohio Fed.10, 2015). If it is, then the court decides whether exercising that jurisdiction is consistent with the Due Process Clause of the United

States Constitution. *Bird, id.*

Defendants do not argue Ohio's long-arm statute defenses but instead focus their arguments on lack of personal jurisdiction on due process challenges. Therefore, it is unnecessary for the Court to go through the analysis of Ohio Revised Code § 2307.382, however, the Court will briefly discuss Ohio's long-arm statute requirements.

**Ohio's Long Arm Statute**

Plaintiff alleges Defendants transacted business in Ohio, subjecting them to personal jurisdiction in Ohio. Section (A)(1) of Ohio's long-arm statute reads:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting business in this state.

O.R.C. § 2307.382 (A)(1).

Given the "relatively slight" burden on Plaintiff to show personal jurisdiction and construing the pleadings and affidavits in Plaintiff's favor, the Court finds Plaintiff has established sufficient contacts with the State of Ohio satisfying Ohio's long-arm statute. The Ohio Supreme Court has held that to 'transact business' is "to prosecute negotiations; to carry on business; [or] to have dealings." *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705-06 (N.D. Ohio 2006), citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990). Here, the parties offer opposing and contradictory affidavits, each attesting to the business dealings in Ohio or lack thereof. However, when as here the Court relies solely on the pleadings and affidavits, it must construe them in favor of the non-movant. When a plaintiff alleges a defendant transacted business in the state by

6

contracting with an in-state plaintiff, the Ohio long-arm statute requires "some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state.'"*Dayton Superior Corp. v. Yan,* 288 F.R.D. 151, 161 (S.D. Ohio 2012) quoting *Shaker Construction Group, LLC v. Schilling,* No. 1:08cv278, 2008 WL 4346777, at *2 (S.D.Ohio Sep. 18, 2008).

The parties acknowledge that they attempted to negotiate a continuation of the 1996 Agreement and that such back and forth negotiations occurred via telephone and emails. While directing communications to an Ohio resident is not enough in and of itself to find personal jurisdiction, such communications concerning the negotiation of contracts is "prosecuting negotiations" under Ohio law and is a factor that supports a finding that the parties transacted business in Ohio.

Tarkett attests it negotiated and executed the Metrics Agreement in Ohio. Courts within this Circuit had held "'[t]ransacting business' subsumes the narrower act of contracting." *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.,* No. C–1–98–844, 1999 U.S.Dist. LEXIS 10805, at *15 (S.D.Ohio July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc.,* 954 F.Supp. 1206, 1210 (N.D.Ohio 1997)). The Supreme Court of Ohio has held that transacting business "encompasses 'to carry on business,' and 'to have dealings,' and is broader ... than the word 'contract.' " *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235 (1994) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.,* 53 Ohio St.3d 73 (1990)). Therefore, while the mere existence of a contract may not be enough to confer personal jurisdiction, a contract may qualify as transacting business under Ohio's long-arm statute, particularly when it imposes continuing obligations on the parties affecting the

State of Ohio.  The 1996 Agreement, while not negotiated in Ohio, imposed continuing obligations on Linron in Ohio and Linron performed installation and removal work in Ohio under the 1996 Agreement.  When coupled with negotiations to continue the 1996 Agreement and the Metrics Agreement these actions by Linron are sufficient evidence it transacted business in Ohio.  Therefore, Tarkett has established Linron transacted business in the state.

**Due Process**

If jurisdiction is proper under Ohio's long arm statute, the Court must next determine whether Linron's contacts with Ohio were sufficient under the Fourteenth Amendment Due Process Clause to allow the Court to exercise jurisdiction.  In order for personal jurisdiction to comply with due process, Defendants must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.' "  *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010).  "Minimum contacts exist where a defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there."  *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two types of personal jurisdiction: 1) general jurisdiction, which requires "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant," and 2) specific jurisdiction, "which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum."  *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir.1997).

The Sixth Circuit has concluded that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov,* 667 F.3d 705, 717 (6th Cir. 2012). Therefore, the Court will analyze whether it has personal jurisdiction over the Linron Defendants under the specific jurisdiction prong of the due process inquiry.

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Patterson*, 89 F.3d at 1263; *S. Mach. Comp. v. Mohasco Indus., Inc*., 401 f.2d 374, 381 (6th Cir.1968).

Personal jurisdiction requires a forum-by-forum analysis. *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 131 S.Ct. 2780, 2789 (2011). "The question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign." *Id*.

**Purposeful Availment**

To be subject to personal jurisdiction, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Importantly, the

9

plaintiff's unilateral activity will not satisfy the required contact between the defendant and the state. *Id.* The Supreme Court has held that "[w]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

According to Defendants, the only connection they have to Ohio is the fact that Tarkett acquired Azrock and decided to move its headquarters to Ohio nearly fifteen years into the parties' relationship. However, the evidence at this stage of the proceedings demonstrates Defendants have, over the course of many years, continuously availed themselves of the privilege of conducting business in Ohio. According to the affidavit of Joseph Jared, Vice President of Business Development for Plaintiff, Linron under the 1996 Agreement, placed sales orders for VCT and other Tarkett products for approximately eighty-two stores located in Ohio from 2012 through 2015. Linron, per the terms of the 1996 Agreement, managed the installation of Tarkett products and removed old flooring in these Ohio Walmart stores. Since moving its headquarters to Ohio, all Linron's communications with Tarkett have been directed to Ohio. Further, Linron employees traveled to Ohio Walmart stores, including those located in the Northern District of Ohio, to inspect allegedly defective Tarkett flooring product, then sent Tarkett travel expense reimbursement requests for the inspections. Linron also sent to Ohio samples of allegedly defective Tarkett flooring

products. Negotiations to resolve issues surrounding the allegedly defective Tarkett products were conducted by Tarkett employees in Ohio and the Metrics Agreement, which was intended to resolve the issues, was executed by Tarkett employees in Ohio.

Linron's flooring activities in Ohio performed under the 1996 Agreement are sufficient to establish purposeful availment given Plaintiff's "slight" burden. The 1996 Agreement imposed continuing obligations upon Linron to install Tarkett product in Walmart stores throughout the United States but also within this jurisdiction. Therefore, Tarkett has met its burden demonstrating purposeful availment.

**Arises Under**

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, the action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). Plaintiff's Complaint alleges claims for Breach of Contract amongst other claims. Under Ohio law, "if the cause of action is for breach of that contract [with an Ohio resident] ... then the cause of action naturally arises from the defendant's activities in Ohio." *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999), quoting *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir.1998). Because the 1996 Agreement imposed continuing obligations on the Linron Defendants, including obligations for work to be performed in Ohio, Linron's actions arise out of its contacts with the State of Ohio.

**Substantial Connection**

Under the final prong of the specific jurisdiction analysis, the Court must determine whether "the acts of the defendant or consequences caused by the defendant must have a

substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Kerry Steel*, 106 F.3d at 150. According to Sixth Circuit precedent, "where the first two prongs are satisfied, only the unusual case will not meet this third criterion." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998). To determine reasonableness, the Court must balance three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Fortis Corporate Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 223 (6th Cir. 2006) (internal citations omitted). Here, while unquestionably defending itself in Ohio will be burdensome on the Linron Defendants, it is not unduly so as Linron routinely performs work in Ohio.

Furthermore, Ohio has a strong interest in ensuring the enforcement of its laws and enforcing contracts. Lastly, Tarkett's claims for breach of contract demonstrate its strong interest in obtaining relief. As is the case here, where Tarkett has met its slight burden to show the Linron Defendants purposefully availed themselves of the Ohio forum and Tarketts injuries were a result in part of Linron's contacts with this forum, specific jurisdiction is presumed. *Cole v. Miletti*, 133 F.3d at 436. The Court finds this is not that rare instance where Defendant's contacts with Ohio are so minimal that such burden outweighs the interests of Ohio.

Having determined the Court has personal jurisdiction over Defendants, the Court denies Defendants' Motion to Transfer as well. When deciding whether to transfer a case under 28 U.S.C. § 1404(a) the Sixth Circuit has stated that, on "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their

convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' " *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n. 1 (6th Cir.2006). Here, there is no compelling private or public factor supporting transfer. Witnesses will be likely split between Texas and Ohio with some located in Alabama and public factors such as Ohio's interest in enforcing contracts favor Ohio.

Therefore, for the foregoing reasons, the Court finds it has personal jurisdiction over Defendants and denies Defendants' Motion to Dismiss or transfer venue.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: May 23, 2017