**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TARKETT USA, INC.** | ) | **CASE NO.1:16CV2400** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **HARNIX CORP., ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Gilles de Beaumont's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Transfer Venue. (ECF # 7). For the following reasons, the Court grants, in part, Defendant's Motion.

According to Plaintiff Tarkett USA, Inc.'s ("Tarkett") Complaint, Gilles de Beaumont was a long time employee of Tarkett and Tarkett's predecessors. In 1996, Tarkett, through its predecessors Azrock Industries, Inc. and National Floor Products Company, Inc., entered into an Agreement with Harnix Corporation d/b/a Linron that involved the reselling of Tarkett products to Walmart. Under the Agreement, Linron would manage the installation process of the Tarkett products. The Agreement contained a non-compete clause wherein Defendants agreed not to sell competing products to Walmart.

Linron also managed the removal of Tarkett products at Walmart stores wherein the old flooring was removed and returned to Tarkett for recycling and use in new Tarkett products. These include vinyl composite tile ("VCT"), which consists of approximately 30% recycled materials, thereby reducing Tarkett's costs and supporting Tarkett's sustainability initiatives.

The relationship continued for nearly twenty years with an average of $14,500,000 of Tarkett products sold to Walmart through 2013. During this time the VCT product sold to Walmart was manufactured in Texas. In 2014, Tarkett moved its VCT production operation to Alabama.

On August 7, 2015, Linron gave Tarkett notice it was terminating the 1996 Agreement. Tarkett acknowledged receipt of the notice and reminded Linron of the prohibited activities clause, including the non-compete provision, that would remain in effect for one year. In spite of the contractual non-compete clause, Defendants have competed with Tarkett in violation of their obligations under the 1996 Agreement.

In 1996, the VCT produced by Tarkett was manufactured in Texas. De Beaumont was Tarkett's Texas-based executive responsible for the manufacturing and sales of the VCT. In his role as a Tarkett executive, Tarkett alleges de Beaumont had access to Tarkett's confidential and proprietary information including, but not limited to, product information, product development and design, the identity of customers and employees; manufacturing and plant operations, vendor information; marketing information and strategies; sales training techniques and programs; acquisition and divestiture opportunities and discussions; and data processing and management information systems, programs and practices.

In 2014, Tarkett moved its VCT manufacturing operation from Texas to Alabama. As a result of the move, de Beaumont was reassigned by Tarkett to Montreal, Canada as a sales manager. De Beaumont terminated his employment with Tarkett shortly thereafter. De Beaumont signed a Separation Agreement with Tarkett wherein he agreed not to compete with Tarkett for one year after the conclusion of his employment with Tarkett. The Separation

Agreement also contained a non-disclosure clause. According to Tarkett, de Beaumont went to work for Linron, a competitor of Tarkett and disclosed Tarkett confidential information to Linron, both in violation of the Agreement. Tarkett alleges Breach of Contract and Tortious Interference with Business Relationships claims against de Beaumont.

De Beaumont moves to dismiss this action or transfer to Texas. According to de Beaumont, the Court lacks personal jurisdiction over him as his contacts with the State of Ohio are minimal. De Beaumont does not challenge the sufficiency of his contacts with the State of Ohio in order to satisfy Ohio's long-arm statute. Instead, he focuses his challenges on the Due Process requirements of personal jurisdiction. De Beaumont contends any contacts he has had with the State of Ohio have been random, fortuitous or attenuated. His Separation Agreement did not contemplate him having any action or continuing obligation in Ohio. Although he spent two days in Ohio negotiating the Separation Agreement, it was only because Plaintiff was located there. Although the Separation Agreement contains a choice of law clause, naming Ohio law as the applicable law to be applied to any disputes, there is no venue provision. Thus, according to de Beaumont, he never purposefully availed himself of the privilege of acting in the State of Ohio.

Moreover, according to de Beaumont, Plaintiff cannot demonstrate that its claims against de Beaumont arose out of his contacts with Ohio. Any alleged breach of the Separation Agreement necessarily occurred outside Ohio as did his allegedly tortious interference with Plaintiff's business relationships.

Lastly, de Beaumont contends it would be unreasonable to hale him into court in Ohio because the Separation Agreement clearly contemplates he was to fulfill his contractual

obligations in Texas, not Ohio. Therefore, the Court lacks any personal jurisdiction over de Beaumont.

De Beaumont requests alternatively that should the Court find it has personal jurisdiction over him, for the convenience of the parties the case be transferred to Texas where the private and public interest factors favor venue in that court.

According to Plaintiff, de Beaumont was a corporate executive with Tarkett for ten years when its headquarters were located in northeast Ohio. As a Tarkett corporate executive, de Beaumont traveled to Ohio regularly, communicated with Ohio, received payments, supplies and reimbursement monies from Ohio and signed his Separation Agreement containing an Ohio choice of law clause. De Beaumont also caused injury in Ohio by disparaging Plaintiff to prospective and current customers of Plaintiff in order to divert business away from Plaintiff. All of this is sufficient to establish the Court's personal jurisdiction over de Beaumont.

## STANDARD OF REVIEW

In deciding whether a court possesses personal jurisdiction, the court applies a two-step inquiry when examining if it has personal jurisdiction over the parties. "First, we must determine whether Ohio law authorizes jurisdiction. If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota*, 545 F.3d 357, 361 (6th Cir. 2008). Where personal jurisdiction is challenged, the plaintiff has the burden of establishing that personal jurisdiction exists. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974). However, the nature of plaintiff's burden changes depending on the manner in which the district court approaches the motion. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir.

1988).  When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, . . . and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]" *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods., & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  Plaintiff need only establish jurisdictional claims with "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to plaintiff.  *Id*.  The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The plaintiff must set forth specific facts showing that the court has jurisdiction.  *Id*.  Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

The court "does not weigh the controverting assertions of the party seeking dismissal." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  The court must first determine whether personal jurisdiction is proper under the forum state's long-arm statute — in this instance, Ohio Revised Code § 2307.382.  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002); *Sterling Jewelers, Inc. v. M & G Jewelers, Inc.*, No. 5:14CV2030, 2015 WL 545778 at *1 (N.D.Ohio Fed.10, 2015).  If it is, then the court decides whether exercising that jurisdiction is consistent with the Due Process Clause of the United States Constitution.  *Bird, id.*

De Beaumont does not argue Ohio's long-arm statute defenses but instead focuses his arguments for lack of personal jurisdiction on due process challenges. Therefore, it is unnecessary for the Court to go through the analysis of Ohio Revised Code § 2307.382, however, the Court will briefly discuss Ohio's long-arm statute requirements.

**Ohio's Long Arm Statute**

Plaintiff alleges de Beaumont transacted business in Ohio, subjecting him to personal jurisdiction in Ohio. Section (A)(1) of Ohio's long-arm statute reads:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> > (1) Transacting business in this state.

O.R.C. § 2307.382 (A)(1).

Given the "relatively slight" burden on Plaintiff to show personal jurisdiction and construing the pleadings and affidavits in Plaintiff's favor, the Court finds Plaintiff has established sufficient contacts with the State of Ohio, satisfying Ohio's long-arm statute. The Ohio Supreme Court has held that to 'transact business' is "to prosecute negotiations; to carry on business; [or] to have dealings." *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705-06 (N.D. Ohio 2006), citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990). Here, the parties offer opposing and contradictory affidavits, each attesting to the business dealings in Ohio or lack thereof.[1] However, when as here the Court relies solely on the pleadings and affidavits, it must construe them in favor of the non-movant. When a plaintiff alleges a defendant transacted business in the state by contracting with an in-

---

[1] De Beaumont also incorporates by reference the Linron Defendants' brief.

state plaintiff, the Ohio long-arm statute requires "some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state.'"*Dayton Superior Corp. v. Yan,* 288 F.R.D. 151, 161 (S.D. Ohio 2012) quoting *Shaker Construction Group, LLC v. Schilling,* No. 1:08cv278, 2008 WL 4346777, at *2 (S.D.Ohio Sep. 18, 2008).

Tarkett attests it negotiated and executed the Separation Agreement in Ohio. Courts within this Circuit have held "'[t]ransacting business' subsumes the narrower act of contracting." *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.,* No. C–1–98–844, 1999 U.S.Dist. LEXIS 10805, at *15 (S.D.Ohio July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc.,* 954 F.Supp. 1206, 1210 (N.D.Ohio 1997)). The Supreme Court of Ohio has held that transacting business "encompasses 'to carry on business,' and 'to have dealings,' and is broader ... than the word 'contract.' " *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235 (1994) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.,* 53 Ohio St.3d 73 (1990)). Therefore, while the mere existence of a contract may not be enough to confer personal jurisdiction, a contract may qualify as transacting business under Ohio's long-arm statute, particularly when it imposes continuing obligations on the parties affecting the State of Ohio. Here, Plaintiff asserts the Separation Agreement imposed continuing obligations on de Beaumont not to disclose Plaintiff's confidential and proprietary information to third parties and prohibited de Beaumont from working for a competitor for a period of time. Because these ongoing obligations to an Ohio- based company affect Ohio, they support the conclusion that de Beaumont transacted business in Ohio. De Beaumont, as a corporate executive of Plaintiff, traveled to Ohio on several occasions over the years of his employment, received payments from Ohio and regularly communicated with and received instructions from Ohio. He negotiated his Separation

7

Agreement, in part, in Ohio. These acts further support a finding that he transacted business in Ohio.

The Court further finds Ohio's long-arm statute is satisfied because de Beaumont's alleged violations of his Separation Agreement caused tortious injury in Ohio by his acts outside the state. O.R.C. § 2307.382(A)(6) confers personal jurisdiction over a defendant who causes "tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Here, Plaintiff alleges de Beaumont breached his non-compete and non-disclosure agreements. The Separation Agreement contains an acknowledgment clause wherein de Beaumont acknowledged that any violation of the non-compete and non-disclosure agreements would irreparably injure Plaintiff if they were not enforced. Thus, the Court finds the allegations in the Complaint and the contractual provisions of the Separation Agreement confer personal jurisdiction over de Beaumont under Ohio's long-arm statute because they caused injury in Ohio.

**Due Process**

If jurisdiction is proper under Ohio's long arm statute, the Court must next determine whether de Beaumont's contacts with Ohio were sufficient under the Fourteenth Amendment Due Process Clause to allow the Court to exercise jurisdiction. In order for personal jurisdiction to comply with due process, de Beaumont must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010). "Minimum contacts exist where a defendant's conduct and connection with the forum state are

such that he would reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two types of personal jurisdiction: 1) general jurisdiction, which requires "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant," and 2) specific jurisdiction, "which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir.1997).

The Sixth Circuit has concluded that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov,* 667 F.3d 705, 717 (6th Cir. 2012). Therefore, the Court will analyze whether it has personal jurisdiction over de Beaumont under the specific jurisdiction prong of the due process inquiry.

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir 1996); *S. Mach. Comp. v. Mohasco Indus., Inc*., 401 F.2d 374, 381 (6th Cir.1968).

9

Personal jurisdiction requires a forum-by-forum analysis. *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 131 S.Ct. 2780, 2789 (2011). "The question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign." *Id*.

**Purposeful Availment**

To be subject to personal jurisdiction, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Importantly, the plaintiff's unilateral activity will not satisfy the required contact between the defendant and the state. *Id.* The Supreme Court has held that "[w]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

A court in the Southern District of Ohio has held that "the purposeful availment prong of the constitutional analysis is coextensive with the 'transacting business' prong of Ohio's long-arm statute" and that if the 'transacting business' prong confers personal jurisdiction over an out of state defendant, exercising personal jurisdiction over that defendant will not offend the 'purposeful availment' prong of the constitutional analysis. *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 168 (S.D. Ohio 2012).

According to de Beaumont, the only connection he has to Ohio is the fact that Tarkett

acquired Azrock and decided to move its headquarters to Ohio years into the parties' relationship.  However, he maintained an employer/employee relationship with the Ohio-based Plaintiff for ten years, traveled to Ohio frequently, was paid from Ohio and took his instructions from Ohio.  He entered into the Separation Agreement with an Ohio company that imposed continuing obligations on his part not to compete or disclose Plaintiff's confidential information. He also contractually agreed that Ohio law governs any disputes arising from the Separation Agreement and agreed that any violations therein would cause Plaintiff injury.   Thus, de Beaumont sought the protections of Ohio's laws for his conduct and he purposefully availed himself of the privilege of conducting business here.

**Arises Under**

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, the  action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).  Plaintiff's Complaint alleges claims for Breach of Contract amongst other claims.   Under Ohio law,  "if the cause of action is for breach of that contract [with an Ohio resident] ... then the cause of action naturally arises from the defendant's activities in Ohio." *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999), quoting  *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir.1998). Here, the substantive claims against de Beaumont arise from his alleged violations of the Separation Agreement, executed by Plaintiff in Ohio and partially negotiated by de Beaumont in Ohio.  The agreement was entered into after a long employment relationship between the parties. In the Separation Agreement, de Beaumont acknowledged any breach would be injurious to Plaintiff and he willfully accepted the protections of Ohio law by agreeing to an Ohio choice of

11

law clause. Although such a clause is not in and of itself dispositive of the issue of personal jurisdiction, it does weigh in favor of it. See *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000), wherein the Sixth Circuit held that a choice of law clause "though alone insufficient to establish jurisdiction, can 'reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'" quoting *Burger King,* 471 U.S. at 482, 105 S.Ct. 2174.

Here, there is no question the dispute arises from de Beaumont's alleged violations of the Separation Agreement's non-compete and non-disclosure clauses. De Beaumont entered into this Agreement with his long-time Ohio based employer, knowing that any breach would cause injury in Ohio, he accepted Ohio's legal protections by agreeing to the choice of law clause and negotiated the Agreement in part in Ohio and accepted payment from Ohio in exchange for his agreement not to compete or disclose the Ohio based Plaintiff's proprietary information. Therefore, the Court finds the claims arise from his contacts with Ohio.

**Substantial Connection**

Under the final prong of the specific jurisdiction analysis, the Court must determine whether "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Kerry Steel*, 106 F.3d at 150. According to Sixth Circuit precedent, "where the first two prongs are satisfied, only the unusual case will not meet this third criterion." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998). To determine reasonableness, the Court must balance three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Fortis Corporate*

*Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 223 (6th Cir. 2006) (internal citations omitted).

Here, de Beaumont traveled to Ohio many times over the course of his employment. Furthermore, his burden is not so excessive since he routinely traveled here during his employment. He acknowledged any breach of the Separation Agreement would cause negative consequences in Ohio. Furthermore, Ohio has a strong interest in ensuring the enforcement of its laws and enforcing contracts. Lastly, Tarkett's claims for breach of contract causing harm to its business and reputation demonstrate its strong interest in obtaining relief. As is the case here, where Tarkett has met its slight burden to show the de Beaumont purposefully availed himself of the Ohio forum and Tarkett's injuries were a result in part of de Beaumont's contacts with this forum, specific jurisdiction is presumed. *Cole v. Miletti*, 133 F.3d at 436. The Court finds this is not that rare instance where Defendant's contacts with Ohio are so minimal that such burden outweighs the interests of Ohio.

Having determined the Court has personal jurisdiction over Defendant, the Court must next determine whether to transfer the action against de Beaumont to Texas. When deciding whether to transfer a case under 28 U.S.C. § 1404(a) the Sixth Circuit has stated that, on "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n. 1 (6th Cir.2006). Private interest factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all

other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Public interest factors include "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Jamhour v. Scottsdale Insurance Co.,* 211 F.Supp.2d 941, 945 (S.D. Ohio 2002) *citing Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839, 91 L.Ed. 1055.

In considering these factors, the Court finds transfer to the Southern District of Texas is appropriate as de Beaumont's alleged wrongful conduct occurred in Texas and/or involved a Texas-based competitor. De Beaumont works in Texas for Linron as Vice-President of Business Development. Any breaches of his Separation Agreement necessarily occurred in Texas. The witnesses to his alleged wrongful conduct are largely located in Texas. In fact, Plaintiff's Complaint does not allege any of his purported misconduct occurred in Ohio. His employment with Plaintiff was based on his location in Texas, and in-fact, he was hired by Plaintiff to work specifically in Texas. Furthermore, de Beaumont's current employer and competitor of Plaintiff is located in Texas. Sources of proof regarding Plaintiff's claim that de Beaumont made disparaging remarks to customers will necessarily involve testimony from the third-party customers over whom the Court lacks subpoena powers. This factor weighs strongly in favor of transfer. "[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.". *B.E. Tech., LLC v. Groupon, Inc.*, 957 F. Supp. 2d 939, 945

(W.D. Tenn. 2013). Other sources of proof will necessarily involve documents from de Beaumont, Linron and third party customers primarily based in Texas. Based on the above private interest factors, the Court finds these factors favor transfer to Texas.

The Court must also consider the public interest factors.

While choice of forum weighs in favor of Ohio, it is given less weight when the case has been removed from state court as here. See *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 947 (S.D. Ohio 2002), ("A plaintiff's choice of forum, however, is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court."). Because the alleged misconduct and breaches having occurred in Texas it is that community where the public is most greatly affected. While the choice of law favors Ohio, it is insufficient to overcome the other factors which weigh decidedly in favor of Texas.

Therefore, for the foregoing reasons, the Court transfers the claims of Plaintiff against de Beaumont to the United States District Court for the Southern District of Texas for further adjudication.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: June 6, 2017